Pilot Royalty Company v. Commissioner. The Home-Stake Royalty Corporation v. Commissioner.
Pilot Royalty Co. v. Commissioner
Docket Nos. 107654, 107730.
United States Tax Court
1942 Tax Ct. Memo LEXIS 27; 1 T.C.M. (CCH) 262; T.C.M. (RIA) 42665; 12/19/1942
*27 Roscoe E. Harper, Esq., and Richard P. Ryan, Esq., for the petitioners. E. G. Sievers, Esq., and L. R. Vanberg, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: These proceedings involve income tax deficiencies for 1938 and 1939 as follows: Docket
No.
Petitioner
Year
Deficiency
107654
Pilot Royalty Co
1938
$ 399.02
107730
Home-Stake Roy-
alty Corp
1938
1,450.04
1939
629.80
The question in issue in both proceedings is whether certain oil and gas royalty interests became worthless during the taxable years giving rise to a deductible loss under section 23 (f) of the Revenue Act of 1938. Since all of the royalties involved in Pilot Royalty Co., Docket No. 107654, are also involved in Home-Stake Royalty Corporation, Docket No. 107730, and since the former proceeding was submitted by agreement of the parties on the evidence adduced in the latter, the proceedings are herewith consolidated for opinion. [The Facts] Petitioners are both Oklahoma corporations with their principal offices at Tulsa, Oklahoma. They both filed their income tax returns for the years involved with the collector of internal revenue for the district of Oklahoma. *28 Both petitioners are engaged principally in the business of acquiring non-producing oil and gas royalties for investment purposes. Both keep their books and make their returns on the accrual basis. In 1938 and 1939 Home-Stake Royalty Corporation charged off in its books as worthless its interests in a total of 25 separate royalties located in the State of Oklahoma, Texas, Kansas, and Illinois. In its returns for each of such years, it deducted the cost or other basis of the royalties charged off during the year amounting to $10,564.92 in 1938 and $4,011.64 in 1939. Pilot Royalty Co. in 1938 charged off in its books and in its income tax returns its interests in eight of the same royalties charged off by Home-Stake Royalty Corporation in that year, amounting in the aggregate to $3,192.19. The respondent disallowed all of the deductions so claimed by both petitioners on the grounds that petitioners still retained title to the royalty interests and had not submitted proof that they became condemned for oil and gas during the years when they were claimed as losses. Stipulations of facts have been filed in each proceeding which contain a description and history of each royalty interest *29 from the date acquired by the petitioners until charged off as worthless. The stipulations also contain maps showing the location of each royalty interest, the producing wells, if any, and the dry holes in the immediate vicinity, the depth of the dry holes, and other data as to the geological formations in the areas of each of the royalties. In addition to the stipulated facts several witnesses testified, some on behalf of the petitioners and some on behalf of the respondent, as to the various factors bearing upon the question of worthlessness of the royalties. [Opinion] After a careful consideration of all of the evidence we are convinced, and we find as a fact, that with the one exception discussed below all of the 25 royalties referred to above, which Home-Stake Royalty Corporation charged off in the years 1938 and 1939 and deducted in its returns, became worthless during those years by reason of the completion of dry holes on or in the immediate vicinity of the royalties, followed, usually, by the abandonment of the premises by the lessee or operator. The evidence in these proceedings is substantially the same as that upon which we determined the worthlessness of certain *30 royalties involved in , promulgated December 9, 1942. In fact, some of the evidence in that case, by stipulation of the parties, was incorporated in the evidence in these proceedings. We held in the Heller case that oil and gas royalties became worthless when, by reason of dry holes drilled on or nearby, they were condemned for oil and gas, in the judgment of those experienced in that business, and when they lost their value in the ordinary channels of trade. See also , promulgated November 18, 1942. It is stipulated in these proceedings, as it was in , and , that the sedimentary series below the formations reached by the drillings on or in the area of the petitioner's royalties have never been tested. As we said in the Heller and Harmon cases, the mere possibility of the existence of oil in some lower formation does not in itself add value to a royalty interest which, in the judgment of those experienced in the business, has become worthless and *31 which is not considered suitable for further development. While the evidence is that there was subsequent development on some of the properties charged off during the taxable years, we do not think this is of much importance in determining the value of the royalties at the close of the taxable years. Subsequent development on abandoned leases usually occurs where a new pool, or at least favorable conditions, has been discovered nearby which justifies further drilling on the once condemned properties. While this later development may give a substantial new value to the leases it cannot affect, retrospectively, a determination of the value previously made on the facts then known. Cf. . Among the royalties charged off by Home-Stake Royalty Corporation in 1938 was one located in Stafford County, Kansas, described in Exhibit 11 of stipulation filed in that proceeding as royalty No. 765, which was considered condemned by a dry hole drilled about half a mile to the north of the royalty on February 20, 1938. As shown by the map, however, another dry hole had been drilled much nearer to the property, to the south, in *32 August, 1937. One of the petitioner's witnesses testified that the reason the royalty was not charged off in 1937 was that this earlier dry hole probably had been overlooked. In any event we think that the royalty became worthless in 1937 when the first and nearer dry hole was completed. The loss deduction claimed on the royalty in 1938 amounting to $221.74 is therefore disallowed. In addition to the royalties referred to above Home-Stake Royalty Corporation in 1938 charged off a royalty identified as No. 382, located in Sumner County, Kansas. The amount charged off and deducted in petitioner's return was the purchase price of the royalty, $1,000, plus a recording fee of $2.53. Petitioner acquired this royalty in 1930. In March, 1938, petitioner learned for the first time that there was an outstanding mortgage on the property at the time it acquired its royalty interest which subsequently had been foreclosed and that as a result of the foreclosure its royalty interest had been lost. Petitioner claimed a loss deduction of the cost of the royalty in its return for 1938. Ordinarily a mortgagor's loss resulting from a foreclosure sale of real estate is said to occur either in the year *33 when the foreclosure sale takes place, or, if there is an equity of redemption, in the year of the expiration of such equity. ; ; ; ; affd., ; ; ; ; The evidence of record does not show in what year the foreclosure sale of the property in question took place or when the equity of redemption, if any there was, expired. Neither do we have any information as to the amount of the mortgage or the value at any time of petitioner's royalty interest, which of necessity was purchased subject to the outstanding mortgage. In these circumstances we must disallow the loss deduction claimed by the petitioner *34 in 1938. The loss deductions claimed by Pilot Royalty Co. were of fractional royalty interests in eight of the same tracts in which Home-Stake Royalty Corporation owned fractional royalty interests. We have held above that the royalty interests of Home-Stake Royalty Corporation in such properties all became worthless and were deductible in 1938. We hold likewise that the royalty interests of Pilot Royalty Co. in such properties became worthless and are deductible in 1938. Decisions will be entered under Rule 50.